UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

BRICKLAYERS INSURANCE AND WELFARE FUND,
BRICKLAYERS PENSION FUND, BRICKLAYERS
SUPPLEMENTAL ANNUITY FUND, BRICKLAYERS
AND TROWEL TRADES INTERNATIONAL PENSION
FUND, NEW YORK CITY AND LONG ISLAND JOINT
APPRENTICESHIP AND TRAINING FUND,
INTERNATIONAL MASONRY INSTITUTE, and
JEREMIAH SULLIVAN, JR., in his fiduciary capacity as
Administrator and Chairman of Trustees, BRICKLAYERS
LOCAL 1, INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED CRAFT WORKERS and
BRICKLAYERS LABOR MANAGEMENT
COMMITTEE,

**REPORT AND RECOMMENDATION**

18-CV-2475 (RJD) (ST)

      Plaintiffs,

 -against-

DORAN TATROW ASSOCIATES, INC. and
PATRICK DORAN,

      Defendants.
------------------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

  Plaintiffs Bricklayers Insurance and Welfare Fund, Bricklayers Pension Fund, Bricklayers Supplemental Annuity Fund, Bricklayers and Trowel Trades International Pension Fund, New York City and Long Island Joint Apprenticeship and Training Fund, International Masonry Institute (collectively, the "ERISA Funds"), Bricklayers Local 1 and its parent organization International Union of Bricklayers and Allied Craft Works ("Local 1"), and Bricklayers Labor Management Committee ("LMC") (collectively, the "Non-ERISA Plaintiffs"), by and through Jeremiah Sullivan, Jr. in his fiduciary capacity as Administrator and Chairman of Trustees, bring this action against Defendants Doran Tatrow Associates, Inc. ("Doran Tatrow") and Patrick Doran individually ("Mr. Doran") pursuant to the Employee Retirement Income Security Act of 1974, 29

U.S.C. §§ 1002 *et seq.* ("ERISA"), the Labor Management Relations Act of 1947, 29 U.S.C. §§ 141 *et seq.* (the "LMRA"), and the New York State common law of conversion. Defendants have failed to answer or otherwise respond to Plaintiffs' Complaint in this action, and Plaintiffs have filed a Motion for Default Judgment against Defendants.

For the reasons set forth below, the Court recommends denying Plaintiffs' Motion without prejudice.

**BACKGROUND**

Each of the ERISA Funds is an "employee benefit plan," a "multiemployer plan," and a fiduciary within the meaning of the applicable sections of ERISA. *See* Complaint ("Compl.") ¶ 6, ECF No. 1. Mr. Sullivan is the President of Local 1, and is the Chairman of Trustees and Administrator of the ERISA Funds. Compl. ¶ 7; Declaration of Jeremiah Sullivan, Jr. ("Sullivan Decl.") ¶ 1, ECF No. 15-2.

Doran Tatrow is party to a Collective Bargaining Agreement ("CBA") with Local 1 covering the union's laborers for the period from February 1, 2012 through January 31, 2015. Compl. ¶ 12; Sullivan Decl. ¶ 2; CBA, ECF No. 15-5 at 2–32.[1] [2] Pursuant to the CBA, Doran Tatrow agreed to make contributions and remittances, based upon hours worked by the laborers, to the ERISA Funds and Non-ERISA Plaintiffs. Compl. ¶¶ 12–14; Sullivan Decl. ¶¶ 2–5; CBA, ECF No. 15-5 at 9–12. From July 1, 2014 through December 31, 2014, Doran Tatrow failed to

---

[1] The document at ECF No. 15-5 contains several separate exhibits. For ease of reference, the Court will cite the page numbers assigned by ECF to the entire collection of exhibits when referring to any of them, rather than the internal page numbers of each exhibit.

[2] Plaintiffs have also submitted a second CBA, effective from February 1, 2015 through January 31, 2019, with their Motion for Default Judgment. *See* Second CBA, ECF No. 15-5 at 34–63. However, as discussed in greater detail below, Plaintiffs made no reference to this CBA in their Complaint, nor did they seek any damages arising from the period covered by this CBA in their Complaint. Because Plaintiffs are not entitled to any relief on the basis of the Second CBA, the Court will disregard it.

make the contributions and remittances owed to Plaintiffs as provided for by the CBA. Compl. ¶¶ 16, 19.³ Mr. Doran, who manages the day-to-day activities and payrolls of Doran Tatrow, failed to make all the required remittances to the Plaintiffs, instead using the assets owed to them to pay Doran Tatrow's creditors and other corporate expenses. Compl. ¶¶ 22–33; Memorandum in Support of Motion for Default Judgment ("Mem. Supp.") 7–8.

On April 26, 2018, Plaintiffs filed this action against Doran Tatrow and Mr. Doran, seeking unpaid contributions, unremitted dues, interest on the unpaid contributions and dues, liquidated damages, and litigation costs. *See* Demand for Relief, Compl. 7–8.⁴ After the Defendants failed to answer or otherwise respond to the Complaint, Plaintiffs requested certificates of default from the Clerk of Court against them.⁵ ECF Nos. 7–10. The Clerk of Court issued the certificates on August 2, 2018. ECF Nos. 11–12. Plaintiffs filed a Motion for Default Judgment against both Defendants on September 21, 2018. ECF No. 15. The Honorable Raymond J. Dearie referred the Motion for

---

³ Plaintiffs previously filed suit against Defendants seeking unpaid contributions and dues for the period of December 2013 through June 2014. *Bricklayers Ins. & Welfare Fund v. Doran Tatrow Assocs.*, No. 15-CV-4836 (DLI) (MDG), 2016 U.S. Dist. LEXIS 121110 at *4–5 (E.D.N.Y. Sept. 6, 2016), *adopted by* 2016 U.S. Dist. LEXIS 137185 (E.D.N.Y. Sep. 29, 2016). The Court ordered Doran Tatrow to submit to an audit covering the period of April 1, 2013 through December 31, 2014. *Id.* at *26. In this case, Plaintiffs are apparently seeking to collect damages that were revealed by that audit.

⁴ Plaintiffs also initially requested that the Court issue an injunction requiring Doran Tatrow to submit to an additional audit covering the period between January 1, 2015 and April 26, 2018, the date they filed the instant lawsuit. *See* Demand for Relief, Compl. 8. Plaintiffs withdrew this request in their Motion for Default Judgment because by that time, Doran Tatrow had already submitted to an audit covering the period of January 1, 2015 through December 31, 2017. *See* Mem. Supp. 10. The Court will disregard Plaintiffs' withdrawn request for an audit.

⁵ Plaintiffs properly served Doran Tatrow and Mr. Doran pursuant to Rule 4 of the Federal Rules of Civil Procedure. *See* Summonses Returned Executed, ECF Nos. 4–5. On May 29, 2018, the Secretary of State was served as Doran Tatrow's agent pursuant to Section 306(b)(1) of the New York Business Corporation Law. *See* Fed. R. Civ. P. 4(h)(1)(A) (providing, by reference to Rule 4(e)(1), that a corporation may be served in a method permitted by state law). On June 5, 2018, a copy of the Summons and Complaint was left at Mr. Doran's dwelling with a relative of suitable age and discretion. *See* Fed. R. Civ. P. 4(e)(2)(B).

Default Judgment to the undersigned to issue a Report and Recommendation. Order dated October 15, 2018.

## DISCUSSION

### I. Defendants Have Defaulted

On a motion for default judgment, the Court "is required to accept all of the [plaintiffs'] factual allegations as true and draw all reasonable inferences in [their] favor, . . . but it is also required to determine whether the [plaintiffs'] allegations establish [the defendants'] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (internal quotation marks and citations omitted).

Here, Defendants have failed to answer or respond to the Complaint, and the Clerk of Court has entered their default. Because Defendants have failed to appear or otherwise move to set aside the default, the Court will consider all well-pleaded allegations in the Complaint as true and will proceed to address Defendants' liability and any remedies they owe Plaintiffs. *See Finkel*, 577 F.3d at 84; *Rolls-Royce*, 688 F. Supp. 2d at 153.

### II. Plaintiffs Can Only Obtain Relief Arising from the Period between July 1, 2014 and December 31, 2014

Plaintiffs have established Defendants' liability under both ERISA and the LMRA, but only for Defendants' underpayments occurring between July 1, 2014 and December 31, 2014, because this is the only time period referenced in their Complaint.

### i. Doran Tatrow

First, Plaintiffs have established Doran Tatrow's liability for failing to make required contributions pursuant to ERISA and the LMRA. Section 515 of ERISA provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. The terms of the CBA obligate Doran Tatrow to make contributions to the Funds at specified rates per hour worked. Compl. ¶ 12; CBA, ECF No. 15-5 at 9–12. Plaintiffs allege that Doran Tatrow failed to make these contributions between July 2014 and December 2014. Compl. ¶ 16. These allegations sufficiently establish Doran Tatrow's liability for violating Section 515 of ERISA during this period.

Similarly, Section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Under Section 301 of the LMRA, an employer may be held liable for failing to remit dues or make contributions to a labor organization as required by a CBA. *See, e.g.*, *Bricklayers Ins. & Welfare Fund v. P.P.L. Constr. Servs. Corp.*, No. 12-CV-3940 (DLI) (ST), 2017 WL 9481016, at *10 (E.D.N.Y. Jan. 12, 2017) (citing *Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc.*, No. 11-CV-5742 (FB) (LB), 2013 WL 2120338, at *3 (E.D.N.Y. Apr. 3, 2013)), *adopted by* 2017 WL 1093192 (E.D.N.Y. Mar. 23, 2017). Plaintiffs allege that Doran Tatrow failed to remit dues to Local 1 and the LMC as required by the CBA between July 2014 and December 2014. Compl. ¶ 19. These allegations establish that Doran Tatrow breached the CBA and is thus liable for violating Section 301 of the LMRA.

ii. *Mr. Doran*

Moreover, Plaintiffs have established Mr. Doran's individual liability for breach of his fiduciary duty to the ERISA Funds and for state law conversion of unremitted dues to the Non-ERISA Plaintiffs for the period between July 1, 2014 and December 31, 2014.

*(a) Breach of Fiduciary Duty*

Under Section 409 of ERISA, individuals who serve as fiduciaries of an ERISA plan may be held personally liable for breaches of their fiduciary duties. *See* 29 U.S.C. § 1109(a); *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997). To establish that an individual defendant is personally liable under this provision, plaintiffs must show "both that (1) the unpaid contributions were plan assets and (2) [the individual defendant] exercised a level of control over those assets sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009).

Plaintiffs have established that the unpaid contributions to the ERISA Funds were plan assets. "Amounts withheld from wages by an employer for contributions to a vacation or pension fund are plan assets of an ERISA employee welfare fund." *Bricklayers Ins. & Welfare Fund v. FJW, Inc.*, No. 15-CV-887 (SJ) (SMG), 2016 WL 4691293, at *3 (E.D.N.Y. Aug. 19, 2016) (citing 29 C.F.R. § 2510.3-102(a)), *adopted by* 2016 WL 4688857 (E.D.N.Y. Sept. 7, 2016). Similarly, delinquent contributions owed to a benefit fund are plan assets if so defined in the agreement creating the fund. *United States v. Panepinto*, 818 F. Supp. 48, 51 (E.D.N.Y. 1993). Plaintiffs request that Mr. Doran be held personally liable for unpaid contributions to four funds: the Vacation Fund, the International Pension Fund ("IPF"), the Pension Fund, and the Annuity Fund. Mem. Supp. 6, 9. The employer is required to deduct after-tax monies from the wages of Plaintiffs' laborers and remit these deductions to the Vacation Fund. Sullivan Decl. ¶ 5; ECF No. 15-5 at 12,

44.⁶ The Agreement and Declaration of Trust of the IPF, the Pension and Annuity Plan of the Pension Fund, and the Supplemental Annuity Plan of the Annuity Fund all provide that money paid into or due to be paid into these funds are assets of each of the plans. *See* ECF No. 15-5 at 127, 131, 133. Thus, the unpaid contributions to these four funds qualify as plan assets.

Plaintiffs have also established that Mr. Doran held a sufficient level of control over these plan assets to make him a fiduciary. "In determining whether an individual defendant is personally liable as a fiduciary . . . courts look to several factors, most significantly, whether a defendant was responsible for authorizing and making payments to an employee benefits plan." *Trustees of Sheet Metal Workers Int'l Ass'n Local No. 38 Vacation Fund*, No. 10-CV-1619 (VB), 2011 WL 9010113, at *6 (S.D.N.Y. Sept. 4, 2011) (internal quotation marks and citation omitted); *see also LoPresti*, 126 F.3d at 40 ("Congress intended ERISA's definition of fiduciary 'to be broadly construed.'") (quoting *Blatt v. Marshall & Lasman*, 812 F.2d 810, 812 (2d Cir. 1987)). Here, Plaintiffs allege that Mr. Doran is the owner of Doran Tatrow (Compl. ¶ 11), the person who "exercis[ed] control over the disposition of the wage deductions that constituted employee contributions to the Vacation Fund" (Compl. ¶ 24), and the person who "manages the day-to-day activities and payrolls of Doran Tatrow and determines if and when to make contributions to" the other three funds (Compl. ¶ 28; Mem. Supp. 7). Similar allegations have been found sufficient to establish an individual's status as an ERISA fiduciary. *See, e.g.*, *Bricklayers Ins. & Welfare Fund v. Tristate Constr. & Masonry, Corp.*, No. 16-CV-4545 (MKB) (VMS), 2018 WL 2244701, at *8 (E.D.N.Y. Feb. 9, 2018), *adopted in relevant part by* 2018 WL 1358813 (E.D.N.Y. Mar. 16, 2018);

---

⁶ Plaintiffs claim that remittances to the Vacation Fund must be made on a weekly basis (Compl. ¶ 2; Sullivan Decl. ¶ 5), but the CBA provides that contributions to the Fund must be made on a monthly basis (ECF No. 15-5 at 12, 44). However, this discrepancy ultimately does not affect the amount of damages that Mr. Doran owes.

*Sullivan v. M.A.C. Design Corp.,* No. 14-CV-1846 (NGG) (VVP), 2015 WL 5518456, at *4 (E.D.N.Y. Sept. 17, 2015). The Court therefore recommends finding that Mr. Doran is a fiduciary of the Vacation Fund, the IPF, the Pension Fund, and the Annuity Fund, and that he be held personally liable for unpaid contributions to these funds pursuant to 29 U.S.C. § 1109(a).

*(b) Conversion*

Plaintiffs also seek to hold Mr. Doran personally liable for conversion of union dues deductions pursuant to New York law. "Conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." *LoPresti*, 126 F.3d at 41 (quoting *Rolls–Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996)). An action for conversion will lie "where there is an obligation to return or otherwise treat in a particular manner the specific money in question." *Id.* (internal quotation marks and citation omitted).

Plaintiffs allege that Mr. Doran failed to segregate and remit Local 1 dues taken from the hourly wages of Local 1 members and commingled the dues deductions with Doran Tatrow's general assets, using them to pay corporate expenses. *See* Compl. ¶ 32. Those allegations are sufficient to state a claim for conversion. *See, e.g.*, *Bricklayers Ins. & Welfare Fund v. Vinza Concrete, Inc.*, No. 15-CV-80 (AMD) (CLP), 2017 WL 4326562, at *5 (E.D.N.Y. Sept. 11, 2017), *adopted by* 2017 WL 4296729 (E.D.N.Y. Sept. 26, 2017).

(c)    *Defendants' Liability Only Spans from July 1, 2014 to December 31, 2014*

At the default judgment stage, Plaintiffs request that the Court hold Defendants liable for underpayments spanning from July 1, 2014 to December 31, 2017. Mem. Supp. 4. As the Court has noted, however, Plaintiffs only allege in their Complaint that Defendants are liable for underpayments that became owing during the period from July 1, 2014 to December 31, 2014.

Plaintiffs' request that Defendants be held liable for underpayments outside of this timeframe, made for the first time in their Motion for Default Judgment, must therefore be denied.

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). As the Second Circuit discussed in *Silge v. Merz* ("*Silge*"), 510 F.3d 157 (2d Cir. 2007):

> It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

*Id.* at 159 (quoting 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2663 (1998)). Moreover, the Second Circuit specifically clarified in *Silge* that damages awarded to a plaintiff who obtains default judgment must "be confined to the amount in the demand clause" of the plaintiff's complaint. *Id.* at 162.

Here, holding Defendants liable for underpayments that occurred between January 1, 2015 and December 31, 2017 would clearly subject them to a judgment of a different "scope and size" than what Plaintiffs sought in their Complaint. The Complaint simply does not reference this period. Because Plaintiffs seek to hold Defendants liable for underpayments in their Motion for Default Judgment that they did not reference in their Complaint, the amount of damages they request at the default stage is much higher than what the Complaint could have led Defendants to anticipate. *Compare* Demand for Relief, Compl. 7–8 (seeking unpaid contributions to the ERISA Funds totaling $73,825.16 from Doran Tatrow and $15,678.19 from Mr. Doran, and unremitted dues to the Non-ERISA Plaintiffs totaling $6,672.61 from Doran Tatrow and $6,170.91 from Mr. Doran) *with* Mem. Supp. 9 (seeking unpaid contributions to the ERISA Funds totaling $220,291.46 from Doran Tatrow and $141,639.63 from Mr. Doran, and unremitted dues to the Non-ERISA

Plaintiffs totaling $19,896.64 from Doran Tatrow and $18,415.94 from Mr. Doran). At the time they defaulted, Defendants had not received notice of this level of exposure via the demand clause of Plaintiffs' Complaint as explicitly required under Second Circuit precedent. *See Silge*, 510 F.3d at 162. Plaintiffs thus cannot rely on Defendants' default to receive this award. If Plaintiffs wished to hold Defendants' liable for underpayments occurring between January 1, 2015 and December 31, 2017 through their Motion for Default Judgment, they could have easily sought to amend their Complaint to include a request for relief covering this period.[7] *Id*. Because they did not, their recovery is limited to underpayments occurring between July 1, 2014 and December 31, 2014.

### III. Plaintiffs' Documentation Is Inadequate to Support an Award of Damages

Not only have Plaintiffs failed to establish Defendants' liability for the vast majority of the underpayments they seek to recover on default, but they have failed to support their request for damages arising between July 1, 2014 and December 31, 2014 with competent evidence. They are therefore not entitled to an award of damages.

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence and detailed

---

[7] As the Court has noted, Plaintiffs did request an injunction requiring Doran Tatrow to submit to an audit covering this period in their Complaint "and *to pay any delinquencies shown to be due as a result of such audit*." Compl. ¶ 37 (emphasis added). To the extent that Plaintiffs argue that this request provided Defendants sufficient notice of their exposure before default, the Court rejects that argument because the request is invalid as a matter of law. A district court may order a defendant to submit to an audit of its records, but not to pay delinquencies shown to be due as a result of the audit, sight unseen. The district court must review the audit before awarding damages based on it. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) ("[A]ll awards [of damages] must be supported by competent evidence concerning the injury . . . ."). Even if this request were legally valid, it was not actually included in the Demand Clause of Plaintiffs' Complaint, and Plaintiffs have now withdrawn their request for an audit covering this period entirely.

affidavits. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

Plaintiffs have submitted the following documentation in support of their request for damages arising from July 2014 to December 2014: an audit report produced by Schultheis & Panettieri, LLP ("S&P") covering the period between April 1, 2013 to December 31, 2014 (ECF No. 15-5 at 64–87) (the "Audit Report");[8] the declaration of Jeremiah Sullivan, President of Local 1 and Chairman and Administrator of the Funds (ECF No. 15-2); the declaration of Viorel Kuzma, a staff member of S&P's Payroll Compliance Department (ECF No. 15-3); the CBA (ECF No. 15-5 at 2–32); and the rate schedules in effect from July 1, 2014 through December 31, 2014 (ECF No. 15-5 at 119–20).

The audit report is ostensibly intended to provide support for the amounts of principal unpaid contributions and unremitted dues requested by Plaintiffs. The first page of the report provides information including the documents the auditor relied on and the auditor's notes, Audit Report, ECF No. 15-5 at 65, and the remainder of the report calculates how much money Doran Tatrow owes to Plaintiffs. The report contains four charts that list the names of the laborers who worked each month and the number of hours they worked.[9] *Id.* at 67–75. It then includes various tables that summarize the amounts owed to Plaintiffs. *Id.* at 76–87.

---

[8] Plaintiffs have also submitted a second audit report, which covers the period from January 1, 2015 to December 31, 2017. *See* ECF No. 15-5 at 88–112. As the Court has discussed, however, Plaintiffs did not mention this period in their Complaint and thus cannot recover underpayments arising from this period. The Court will therefore disregard this second audit report.

[9] The first chart, captioned "Fringe Benefit Deficiency Hourly Funds," and the third chart, captioned "Fringe Benefit Deficiency Hourly Int'l," list the number of hours performed by the laborers monthly and indicate the documentation that served as the basis for the numbers of hours in each column. ECF No. 15-5 at 67–68, 71–73. The second chart, captioned "Fringe Benefit Deficiency Funds," and the fourth chart, captioned "Fringe Benefit Deficiency Int'l," ostensibly

The Court finds that the audit report is not a reliable basis for awarding the damages Plaintiffs seek. "Although courts do rely on audits or auditor's reports for assessing damages, courts still must examine whether the assumptions and techniques relied upon by the auditors were reasonable, or rather rendered the Plaintiffs' audit simply too speculative to support a finding of damages." *Trustees of Local 813 Ins. Tr. Fund v. Rogan Bros. Sanitation Inc.*, No. 12-CV-6249 (ALC) (HBP), 2018 WL 1587058, at *10 (S.D.N.Y. Mar. 28, 2018) (internal quotation marks and citations omitted), *appeal withdrawn sub nom.*, *Trustees of Local 813 Ins. Tr. Fund v. A.R.J.R. Trucking Corp.*, No. 18-1274, 2018 WL 8221734 (2d Cir. Nov. 13, 2018); *see also Trustees of the Plumbers Local Union 1 Welfare Fund v. Philip Gen. Constr.*, 2007 WL 3124612, at *10 (E.D.N.Y. Oct. 23, 2007) ("*If adequately explained and credited by the Court*, the opinion of an auditor is a sufficient basis for an award of a specific amount of damages." (citation omitted) (emphasis added)).

The most significant problem with the audit report is its recording of the numbers of hours worked by the laborers. The first page of the report indicates that the S&P auditor examined: (i) Doran Tatrow's payroll records, which the auditor indicates were recorded on a weekly basis, (ii) the employees' W2's, (iii) shop steward reports, and (iv) Doran Tatrow's bank statements (in lieu of a general ledger, which Doran Tatrow apparently did not maintain). Audit Report, ECF No. 15-5 at 65. These documents, with the exception of the W2's, should presumably reflect the number of hours Local 1's laborers worked (and/or the amount Doran Tatrow paid the laborers) on a weekly or monthly basis. However, the auditor indicates in her notes that "the employer did not

---

multiply the numbers of hours contained in the first and third charts by the rates at which contributions to the various funds were owed. *Id.*, ECF No. 15-5 at 69–70, 74–75.

provide documentation to show when the [laborers] worked in" New Jersey, where much of their work for Doran Tatrow was apparently performed. *Id*.

On its face, the audit report indeed appears to indicate the number of hours each laborer worked in a given month. *See* Audit Report, ECF No. 15-5 at 67–75 (presenting rows for each month in which laborers performed work from April 2013 to December 2014, and including the number of hours each laborer worked each month in each corresponding row). In the months from July 2014 to November 2014, the report does not indicate that any of the laborers performed work for Doran Tatrow. *Id.* at 68, 72–73. In December 2014, the report indicates that three laborers—Grzegorz Dymek, Tadeusz Rogowski, and Miroslav Suvak—performed work for Doran Tatrow. *Id.* at 68, 73. Specifically, it indicates that Dymek worked 862.5 hours, Rogowski worked 923.5 hours, and Suvak worked 722.5 hours during December 2014. *Id*. But there are only 744 hours in the month of December. It is literally impossible for the first two laborers to have worked the number of hours that the report reflects, and it is practically impossible for the third. The Court cannot accept these numbers as accurate.

Plaintiffs' counsel proffers an explanation for this apparent impossibility via a footnote in the Memorandum of Law in Support of Default Judgment, stating that:

> With respect to the audit covering the April 1, 2013 to December 31, 2014 period, Doran Tatrow only provided payroll records reflecting year-to-date totals with no monthly breakdowns for three workers, Grzegorz Dymek, Tadeusz Rogowski and Miroslav Suvak. Those totals are presented as entries for December 2014. Since the defendant paid benefits for these workers in April, May and June 2014, and has been credited accordingly, the remaining balance reflects hours worked after June 2014.

Mem. Supp. 8–9 n.5. The Court understands counsel's intended assertion to be that the numbers of hours listed in December 2014 in the audit report actually represent all of the hours worked by

the laborers between July 2014 and December 2014.[10]

The fact that this explanation is only provided by counsel in Plaintiffs' memorandum of law, however, prevents the Court from relying on it to support an award of damages. *See Trustees of Local 522 Pension Fund v. Tri-Boro & Rest. Supply Co.*, No. 12-CV-0163 (KAM) (LB), 2013 WL 685377, at *4 (E.D.N.Y. Feb. 24, 2013) ("'The absence of an affidavit by a person with actual knowledge of the facts, supported by appropriate documentation, deprives the court of the ability to make an independent assessment of the damages to be awarded' at this time.") (quoting *Bricklayers Ins. & Welfare Fund v. David & Allen Contracting, Inc.*, No. 05-CV-4778 (SJ) (VVP), 2007 WL 3046359, at *5 (E.D.N.Y. Oct. 16, 2007) (alteration omitted)); *see also Trans Atl. Airlines, Inc. v. Kambi Travel Int'l*, No. 05-CV-2552 (RLE), 2006 WL 1006563, at *2 (S.D.N.Y. Apr. 18, 2006) (holding that "[t]he representations of counsel are not adequate to establish [plaintiff's] damages" on a motion for default judgment). Plaintiffs have provided no indication that their counsel has actual knowledge of the laborers' work schedules. The only evidence presented by Plaintiffs that was apparently created after a review of primary records is the audit report itself, and the audit report on its face clearly indicates that the three laborers worked only during December 2014, not during July through November 2014.

But counsel's representation that "Doran Tatrow only provided payroll records reflecting year-to-date totals with no monthly breakdowns for" Dymek, Rogowski, and Suvak, Mem. Supp.

---

[10] Read literally, it is not clear that counsel actually says this in the footnote. Counsel says that Doran Tatrow provided "year-to-date totals" of the numbers of hours worked by the laborers, and that "[t]*hose totals*"—seemingly referring to the year-to-date-totals—"are presented as entries for December 2014." Mem. Supp. 8–9 n.5 (emphasis added). Counsel then states that the "remaining balance reflects hours worked after June 2014," *id.*, but there is no apparent antecedent for the phrase "remaining balance." It is thus not clear that counsel is even asserting that the number of hours the audit report says the three laborers worked in December 2014 represents only the hours they worked from July to December, rather than for the whole year.

8–9 n.5, is not only insufficiently supported—it appears to be refuted by the audit report. If the auditor was only in possession of annual totals of the number of hours these three laborers worked for the entire year of 2014, then the audit report should not contain entries for hours worked by these laborers broken down by month for the *first half* of 2014. But it does. It specifically records the numbers of hours worked by Dymek, Rogowski, and Suvak in January, April, May, and June 2014 in the Fringe Benefit Deficiency Hourly International chart. Audit Report, ECF No. 15-5 at 72–73.[11] What's more, the hours worked by these laborers are listed under the column "PR," *id.*, which appears to mean that the auditor determined the number of hours the laborers worked in these months by reviewing "Payroll Records." The inclusion of the number of hours worked by these laborers for *some* of the months in 2014 contradicts counsel's claim that Doran Tatrow only provided year-end totals of the number of hours they worked. As such, even if Plaintiffs had submitted the claim contained in counsel's footnote in some other form—say, in the declaration of Mr. Kuzma—the Court would not readily be able to credit that claim because the audit report clearly reflects that the auditor had monthly payroll records for at least part of 2014.

---

[11] Puzzlingly, the Fringe Benefit Deficiency Hourly Funds chart does *not* list Dymek, Rogowski, and Suvak as having worked in these four months (January, April, May, and June of 2014). *See* Audit Report, ECF No. 15-5 at 68. But the total number of hours for each of these four months is higher than the sum of the total number of hours worked by the laborers who are listed; for example, the number of hours listed for January 2014 is 92, even though the hours worked by the laborers who are listed only add up to 84. *Id.* at 68 (indicating that Jorge Barreto worked 44 hours and Douglas Schuchman worked 40 hours in January 2014, but stating that the total number of hours worked in January 2014 is 92). The number of hours worked by the laborers in each month *do* add up to the reported total number of hours, however, in the Fringe Benefit Deficiency Hourly International chart. *Id.* at 72–73. The total numbers of hours for each month are the same in both charts. *Compare id.* at 68 (reporting a total of 92 hours worked in January, 777 in April, 499 in May, and 269 in June) *with id.* at 72–73 (same). The Court cannot discern any reason why Dymek's, Rogowski's, and Suvak's names would be removed from the Fringe Benefit Deficiency Hourly Funds chart even though their hours are apparently included in the totals.

For these reasons, Plaintiffs have not met their burden to present clear and competent evidence to establish the number of hours the Local 1 laborers worked from July 2014 to December 2014, which is the only period referenced in the Complaint for which Plaintiffs seek damages at the default judgment stage.[12] On this record, the Court cannot determine Plaintiffs' damages "to a reasonable certainty."[13] *Credit Lyonnais Sec. (USA), Inc.*, 183 F.3d at 155. The Court thus cannot determine the amount of unpaid contributions and unremitted dues Defendants owe Plaintiffs, since these figures are a function of the number of hours worked by the laborers. The Court therefore recommends finding that the evidence submitted by Plaintiffs is inadequate to render any award of damages.[14]

## CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs have failed to establish Defendants' liability for the majority of underpayments they seek to collect in their Motion for Default Judgment, and that even where they have established Defendants' liability, they have not supported their Motion with competent evidence that supports an award of damages. Therefore, the Court recommends denying Plaintiffs' Motion for Default Judgment without prejudice,

---

[12] None of the other documents Plaintiffs have submitted with their Motion for Default Judgment provide any evidentiary basis for their requested damages award, either, because none of them reflect the number of hours worked by the laborers. *See* Sullivan Decl. (not mentioning the number of hours worked by the laborers); Kuzma Decl. ¶¶ 4, 7 (claiming that the amounts owed were calculated by multiplying the number of hours worked by the corresponding contribution rates under the CBA, but not stating the number of hours worked or explaining the numbers indicated in the audit report).

[13] Yet another apparent problem with the audit report is that the table that summarizes the damages calculations lists the period during which Local 1's laborers worked as "08/01/2014 – 01/31/2015," Audit Report, ECF No. 15-5 at 83, even though the audit only covered through the end of 2014.

[14] Because the Court recommends finding that Plaintiffs have not supported their request for principal unpaid contributions and unremitted dues with competent evidence, the Court also recommends denying the other forms of damages requested by Plaintiffs, including prejudgment interest, liquidated damages, attorneys' fees, and costs.

allowing them to amend their Complaint and/or re-file their Motion in order to provide an evidentiary basis for an award of damages.

Plaintiffs are ordered to serve a copy of this Report and Recommendation on Defendants at their respective last known addresses and file proof of service with the Court within five (5) business days.

### OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Responses to any objections shall be due fourteen (14) days from service of the objection. *See* Fed. R. Civ. P. 72(b)(2).

**SO ORDERED.**

                                                    /s/
                                    Steven L. Tiscione
                                    United States Magistrate Judge
                                    Eastern District of New York

Dated: Brooklyn, New York
        August 30, 2019