**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X

BRICKLAYERS INSURANCE AND WELFARE FUND,
BRICKLAYERS PENSION FUND, BRICKLAYERS
SUPPLEMENTAL ANNUITY FUND, BRICKLAYERS
AND TROWEL TRADES INTERNATIONAL PENSION
FUND, NEW YORK CITY AND LONG ISLAND JOINT
APPRENTICESHIP AND TRAINING FUND,
INTERNATIONAL MASONRY INSTITUTE, and
JEREMIAH SULLIVAN, JR., in his fiduciary capacity as
Administrator and Chairman of Trustees, BRICKLAYERS        **REPORT AND**
LOCAL 1, INTERNATIONAL UNION OF                           **RECOMMENDATION**
BRICKLAYERS AND ALLIED CRAFT WORKERS and
BRICKLAYERS LABOR MANAGEMENT                              18-CV-2475 (RJD) (ST)
COMMITTEE,

                              Plaintiffs,

     -against-

DORAN TATROW ASSOCIATES, INC. and
PATRICK DORAN,

                              Defendants.
---------------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Plaintiffs Bricklayers Insurance and Welfare Fund, Bricklayers Pension Fund, Bricklayers

Supplemental Annuity Fund, Bricklayers and Trowel Trades International Pension Fund, New

York City and Long Island Joint Apprenticeship and Training Fund, International Masonry

Institute (collectively, the "ERISA Funds"), Bricklayers Local 1 and its parent organization

International Union of Bricklayers and Allied Craft Works ("Local 1"), and Bricklayers Labor

Management Committee ("LMC") (collectively, the "Non-ERISA Plaintiffs"), by and through

Jeremiah Sullivan, Jr. in his fiduciary capacity as Administrator and Chairman of Trustees, bring

this action against Defendants Doran Tatrow Associates, Inc. ("Doran Tatrow") and Patrick Doran

individually ("Mr. Doran") pursuant to the Employee Retirement Income Security Act of 1974, 29

U.S.C. §§ 1002 *et seq.* ("ERISA"), the Labor Management Relations Act of 1947, 29 U.S.C. §§ 141 *et seq.* (the "LMRA"), and the New York State common law of conversion.

In an order dated September 16, 2019, the District Court adopted this Court's previous Report and Recommendation to deny Plaintiff's Motion for Default Judgement without prejudice. Order, No. 18-cv-2475 (E.D.N.Y. Sept. 16, 2019). Since then, Plaintiffs have filed an Amended Complaint (Am. Compl., ECF No. 20), for which Defendants have failed to answer or otherwise respond. Premised on the Amended Complaint, Plaintiffs have filed this Second Motion for Default Judgment against Defendants. 2d Mot. for Default J., ECF No. 34.

For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion be GRANTED and that Plaintiffs be awarded damages and injunctive relief described herein.

## BACKGROUND

Each of the ERISA Funds is an "employee benefit plan," a "multiemployer plan," and a fiduciary within the meaning of the applicable sections of ERISA. *See* Am. Compl. ¶ 6. Mr. Sullivan is the President of Local 1, and is the Chairman of Trustees and Administrator of the ERISA Funds. Am. Compl. ¶ 7; Declaration of Jeremiah Sullivan, Jr. ("Sullivan Decl.") ¶ 1, ECF No. 34-1.

Doran Tatrow is party to a Collective Bargaining Agreement with Local 1 covering the union's laborers for the period from February 1, 2012 through January 31, 2015 (Pl.'s Mot. for Default J., Ex. A ("First CBA") at 2-32, ECF No. 34-6[1]), and another covering the period from February 1, 2015 through January 31, 2019 (2d Mot. for Default J., Ex. B ("Second CBA") at 34-

---

[1] The document at ECF No. 34-6 contains several separate exhibits. For ease of reference, the Court will cite the page numbers assigned by ECF to the entire collection of exhibits when referring to any of them, rather than the internal page numbers of each exhibit.

63, ECF No. 34-6). Am. Compl. ¶ 12, ECF No. 20; Sullivan Decl. ¶ 2, ECF No.34-1.  Pursuant to the CBA, Doran Tatrow agreed to make contributions and remittances, based upon hours worked by the laborers, to the ERISA Funds and Non-ERISA Plaintiffs. Am. Compl. ¶¶ 12–14; Sullivan Decl. ¶¶ 2–5, ECF No. 34-1; First CBA at 9–12, Second CBA at 9-12, ECF No. 34-6.  From July 1, 2014 through December 31, 2017, Doran Tatrow failed to make those contributions and remittances owed to Plaintiffs. Am. Compl. ¶ 15.  Further, Mr. Doran, who manages the day-to-day activities and payrolls of Doran Tatrow, failed to make all the required remittances to the Plaintiffs, and instead used those assets to pay Doran Tatrow's creditors and for other corporate expenses. Am. Compl. ¶¶ 22–44; Mem. in Supp. of 2d Mot. for Default J. ("2d Mem. Supp.") at 7–8, ECF No. 34-4.

On April 26, 2018, Plaintiffs commenced this action against Doran Tatrow and Mr. Doran, seeking unpaid contributions, unremitted dues, interest on the unpaid contributions and dues, liquidated damages, litigation costs, and an injunction requiring an audit. *See* Compl. 7–8.  After the Defendants failed to answer or otherwise respond to the Complaint, Plaintiffs requested certificates of default from the Clerk of Court against them. ECF No. 7, 10.  The Clerk of Court issued the certificates on August 2, 2018. ECF No. 11, 12.  On September 21, 2018, Plaintiffs filed their first Motion for Default Judgment against both Defendants. Mot Default J., ECF No. 15.  The Honorable Raymond J. Dearie referred that motion to the undersigned to issue a Report and Recommendation. Order, No. 18-cv-2475 (E.D.N.Y. Oct. 15, 2018).

On August 30, 2019, this Court issued its Report and Recommendation, recommending that Plaintiff's Motion for Default Judgement be denied without prejudice to renew. R. & R., No. 18-cv-2475 (E.D.N.Y. Aug. 30, 2019), ECF No. 17.  In it, this Court found that the Plaintiff's had failed to establish Defendants' liability for the majority of underpayments they sought to collect,

and that even where they have established Defendants' liability, they had not supported their Motion with competent evidence that supported an award of damages. *Id.* The District Court adopted this Court's Report and Recommendation in its entirety, granting leave for Plaintiff to amend their complaint. Order, No. 18-cv-2475 (E.D.N.Y. Sept. 16, 2019).

On September 30, 2019, Plaintiff's filed an Amended Complaint which alleged the same claims as the initial Complaint but expanded the time period to cover July 1, 2014 through December 31, 2017. *See* Am. Compl., ¶ 15, ECF No. 20. After the Defendants failed to answer or otherwise respond to the Amended Complaint, Plaintiffs requested certificates of default from the Clerk of Court against them. ECF No. 27, 28. The Clerk of Court issued the certificates on January 2, 2020. ECF No. 30, 31. On February 7, 2020, Plaintiffs filed this Second Motion for Default Judgment against both Defendants. *See* 2d Mot. Default J., ECF No. 34. The Honorable Raymond J. Dearie referred the motion to the undersigned to issue a Report and Recommendation. Order, No. 18-cv-2475 (E.D.N.Y. Apr. 23, 2020).

## STANDARD OF REVIEW

On a motion for default judgment, the Court "is required to accept all of the [plaintiffs'] factual allegations as true and draw all reasonable inferences in [their] favor, . . . but it is also required to determine whether the [plaintiffs'] allegations establish [the defendants'] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (internal quotation marks and citations omitted).

## DISCUSSION

Defendants have failed to answer or respond to the Amended Complaint, and the Clerk of Court has entered their default. Because Defendants have failed to appear or otherwise move to set aside the default, the Court will consider all well-pleaded allegations in the Amended Complaint as true and will proceed to address Defendants' liability and any remedies they owe Plaintiffs. *See Finkel*, 577 F.3d at 84; *Rolls-Royce*, 688 F. Supp. 2d at 153.

### I.    Claims against Doran Tatrow

*Liability*

The factual allegations in the Amended Complaint establish Doran Tatrow's liability for failing to make required contributions pursuant to ERISA and the LMRA between July 2014 and December 2017. Section 515 of ERISA provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. The terms of the CBAs obligate Doran Tatrow to make contributions to the Funds at specified rates per hour worked. Am. Compl. ¶ 12, ECF No. 20; First CBA at 9–12, Second CBA at 9-12, ECF No. 34-6. Plaintiffs allege that Doran Tatrow failed to make these contributions between July 2014 and December 2017. Am. Compl. ¶ 17, ECF No. 20. These allegations sufficiently establish Doran Tatrow's liability for violating Section 515 of ERISA during this period.

Similarly, Section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Under Section 301 of the LMRA, an employer may be held liable

for failing to remit dues or make contributions to a labor organization as required by a CBA. *See, e.g.*, *Bricklayers Ins. & Welfare Fund v. P.P.L. Constr. Servs. Corp.*, No. 12-CV-3940 (DLI) (ST), 2017 WL 9481016, at *10 (E.D.N.Y. Jan. 12, 2017) (citing *Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc.*, No. 11-CV-5742 (FB) (LB), 2013 WL 2120338, at *3 (E.D.N.Y. Apr. 3, 2013)), *adopted by* 2017 WL 1093192 (E.D.N.Y. Mar. 23, 2017).  Plaintiffs allege that Doran Tatrow failed to remit dues to Local 1 and the LMC as required by the CBA between July 2014 and December 2017. Am. Compl. ¶ 20, ECF No. 20.  These allegations establish that Doran Tatrow breached the CBAs and is thus liable for violating Section 301 of the LMRA.

### *Damages*

While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  The Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2).  However, the Court is not required to hold a hearing if the party seeking damages submits "[d]etailed affidavits and other documentary evidence" in support of its request. *See Chanel, Inc. v. Louis*, No. 06–CV–5924 (ARR) (JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)). The plaintiff bears the burden of presenting proof of damages. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991).  "[W]hen reviewing the sufficiency of the damages evidence, [courts] are guided by the principle that if a plaintiff has shown it more likely than not that it has suffered damages, the amount of damages need only be proved with reasonable certainty." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 820 F. Supp. 2d 410, 419 (E.D.N.Y.

2011), aff'd, 710 F.3d 57 (2d Cir. 2013) (quoting *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 496 (2d Cir. 1995)).

Plaintiffs have submitted the following documentation in support of their request for damages arising from July 2014 to December 2017: the declaration of Jeremiah Sullivan, President of Local 1 and Chairman and Administrator of the Funds (Sullivan Decl., ECF No. 34-1); the declaration of Viorel Kuzma, a staff member of the Payroll Compliance Department in Schultheis & Panettieri, LLP ("S&P) the outside auditor ("Kuzma Decl.", ECF No. 34-2)[2]; the First CBA (ECF No. 34-6 at 2-32), the Second CBA (ECF No. 34-6 at 34-63); rate schedules for the dues and contributions due under the operative CBA from February 1, 2014 to July 31, 2014 (ECF No. 34-6 at 119), from August 1, 2014 to January 31, 2015 (ECF No. 34-6 at 120), from February 1, 2015 to July 31, 2015 (ECF No. 34-6 at 121), from August 1, 2016[3] to July 31, 2017 (ECF 34-6 at 122), and from August 1, 2017 to July 31, 2018 (ECF No. 34-6 at 123) (collectively the "Rate Schedules").

Plaintiffs also submitted an audit report produced by S&P covering the period from April 1, 2013 to December 31, 2014 (Mem. Law at 65–87, ECF No. 34-6) (the "First Audit Report"), an audit report produced by S&P covering the period between January 1, 2015 to December 31, 2017

---

[2] In its prior R&R, his Court found Viorel Kuzma's explanation of the methodology employed to calculate the alleged delinquent fund contributions (*see* ECF No. 15-3) to be insufficient. *See* ECF No. 17. Kuzma's declaration attached to Plaintiff's Second Motion for Default Judgment is more comprehensive. Kuzma Decl., ECF No. 34-2. In addition to greater exposition, the declaration includes references to Exhibits L (ECF No. 34-7 at 2-3) and M (ECF No. 34-7 at 5-187) which are the payroll records obtained from Doran Tatrow upon which the two audits are in large part based. These additions provided the Court more clarity in ascertaining the appropriate amount of damages with reasonable certainty.

[3] The rate schedules provided by Plaintiff do not include the period from August 1, 2015 through July 31 2016. *See* Rate Schedules, ECF No. 34-6 at 114-124. However, the increases described in the summary paragraph at the top of the rate schedule beginning August 1, 2016, and further delineated thereunder in the wage breakdown, reflect that there was no change during that interim period.

(Mem. Law at 89–112, ECF No. 34-6) (the "Second Audit Report"), the payroll records received from Doran Tatrow for 2014 (ECF No. 34-7 at 2-3; *see* Kuzma Decl. ¶ 14, ECF No. 34-2), and the payroll records received from Doran Tatrow for 2015 through 2017 (ECF No. 34-7 at 5-187).

"Although courts do rely on audits or auditor's reports for assessing damages, courts still must examine whether the assumptions and techniques relied upon by the auditors were reasonable, or rather rendered the Plaintiffs' audit simply too speculative to support a finding of damages." *Trustees of Local 813 Ins. Tr. Fund v. Rogan Bros. Sanitation Inc.*, No. 12-CV-6249 (ALC) (HBP), 2018 WL 1587058, at *10 (S.D.N.Y. Mar. 28, 2018) (internal quotation marks and citations omitted), *appeal withdrawn sub nom.*, *Trustees of Local 813 Ins. Tr. Fund v. A.R.J.R. Trucking Corp.*, No. 18-1274, 2018 WL 8221734 (2d Cir. Nov. 13, 2018); *see also Trustees of the Plumbers Local Union 1 Welfare Fund v. Philip Gen. Constr.*, 2007 WL 3124612, at *10 (E.D.N.Y. Oct. 23, 2007) ("If adequately explained and credited by the Court, the opinion of an auditor is a sufficient basis for an award of a specific amount of damages." (citation omitted)).

Here, the payroll records provided by Doran Tatrow to S&P for the audits were incomplete, insofar as they seem to be inconsistently recorded. *See* Kuzma Decl. ¶ 14-22, ECF No. 34-2.  For the First Audit, S&P had to rely on year-to-date summaries for all of 2014 since those payroll summaries contained little to no weekly or monthly breakdown. *See* Kuzma Decl. ¶ 14,16, ECF No. 34-2.  Similarly, for the Second Audit, the payroll records contained gaps in information for certain weeks. *See* Kuzma Decl. ¶ 22, ECF No. 34-2.  S&P used year-to-date totals and placed any missing hours into the last month for the period. *See* Kuzma Decl. ¶ 14-20, 23, ECF No. 34-2. Under the CBA, interest accrues monthly. *See* Mem. Law at 11, n. 4, ECF No. 34-4; *see* First CBA, ECF No. 34-6; *see* Second CBA, ECF No. 34-6.  Plaintiffs explain that, by sorting the remaining hours into the last month of the period, Doran Tatrow's interest is reduced. Kuzma Decl. ¶ 21.

The Court is satisfied with the methodology employed by S&P. Therefore, these reports and the other documents provided by Plaintiffs are sufficient to allow the Court to assess the amount of damages owed by Doran Tatrow without holding a hearing.

Section 502 of ERISA sets forth the damages that are recoverable for an employer's failure to remit contributions as required by Section 515 of ERISA. Section 502 provides, in relevant part:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan-
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). As for the non-ERISA plans and other required contributions specified under the CBAs, Plaintiffs' damages are limited to those provided for in the CBAs and trust agreements. *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 284 (E.D.N.Y. 2010).

A.    Unpaid contributions

Doran Tatrow was required to make contributions and remittances to the ERISA funds. *See* Sullivan Decl. ¶ 2-3, ECF No. 34-1; *see* First CBA at 4-13, ECF No. 34-6; *see* Second CBA at 41-

49, ECF No. 34-6. S&P calculated the delinquent amount by multiplying the number of hours worked during the relevant period by the corresponding Rate Schedule for each ERISA entity as required by the time period's controlling CBA.[4] Kuzma Decl. ¶ 4, ECF No. 34-2; *see* First CBA at 4-13, ECF No. 34-6; *see* Second CBA at 41-49, ECF No. 34-6; *see* First Audit Report at 65–87, ECF No. 34-6; *see* Second Audit Report at 89–112, ECF No. 34-6; *see* Rate Schedules at 119-123, ECF No. 34-6. The combined results of S&P's First Audit Report (ECF No. 34-6 at 65–87) and their Second Audit Report (ECF No. 34-6 at 89–112) concluded that Doran Tatrow failed to make a total of $220,291.46 in contributions and remittances to the ERISA Funds. Kuzma Decl. ¶ 4-5, ECF No. 34-2; *see* Statement of Damages at 1, ECF No. 34-5; *see* Am. Compl. ¶ 17; ECF No. 20.

Doran Tatrow was also required to make payments to Local 1 and the LMC. *See* Sullivan Decl. ¶ 4, ECF No. 34-1; *see* First CBA at 4-13, ECF No. 34-6; *see* Second CBA at 41-49, ECF No. 34-6. S&P calculated the delinquent amount by multiplying the number of hours worked during the relevant period by the corresponding Rate Schedule for Local 1 and the LMC as required by the time period's controlling CBA.[5] Kuzma Decl. ¶ 4, ECF No. 34-2; *see* First CBA at 4-13, ECF No. 34-6; *see* Second CBA at 41-49, ECF No. 34-6; *see* First Audit Report at 65–87, ECF No. 34-6; *see* Second Audit Report at 89–112, ECF No. 34-6; *see* Rate Schedules at 119-123, ECF No. 34-6. The combined results of S&P's First Audit Report (ECF No. 34-6 at 65–87) and their Second Audit Report (ECF No. 34-6 at 89–112) concluded that Doran Tatrow failed to make a total of $19,896.64 in payments to Local 1 and the LMC. Kuzma Decl. ¶ 4, 5, ECF No. 34-2; *see* Statement of Damages at 1, ECF No. 34-5; *see* Am. Compl. ¶ 20; ECF No. 20.

---

[4] The total contribution rates changed throughout the period of delinquency alleged in the Amended Complaint. *See* Kuzma Decl ¶ 4. Accordingly, Plaintiff's included the various rate schedules covering the audited periods. *See* Rate Schedules at 119-123, ECF No. 34-6. The rates increased periodically, generally every six or twelve months. *See id.*

[5] *See* n. 4.

The Court therefore respectfully recommends that Plaintiffs be awarded $220,291.46 for the unpaid contributions and remittances to the ERISA Funds, and $19,896.64 for the unpaid required payments to Local 1 and the LMC.

B.    Interest

Plaintiffs also seek interest on these unpaid contributions. Such interest is recoverable pursuant to both ERISA (*see* 29 U.S.C. § 1132 (g)(2)(B) (providing that "the court shall award the plan . . . interest on the unpaid contributions")), and, in the Court's discretion, the LMRA. *See Triple A Grp.*, 708 F. Supp. 2d at 287 (E.D.N.Y. 2010) (citations omitted).

Under the terms of the CBAs, any principal amount that is unpaid by Doran Tatrow accrues interest at an annual percentage rate of 10%. Am. Compl. ¶ 18, 21, ECF No. 20; Kuzma Decl. ¶ 12, ECF No. 34-2; First CBA at 14, ECF No. 34-6; *see* Second CBA at 46, ECF No. 34-6. Since it is provided for explicitly by the CBA, the 10% rate applies to unpaid contributions owing to both the ERISA and non-ERISA plans. *See* 29 U.S.C. § 1132(g)(2) ("[I]nterest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."); *see also Annuity, Pension, Welfare & Training Funds of I.U.O.E. Local 14-14 B v. Falcon Steel Co.*, No. 16-CV-0020 (RRM), 2016 WL 8465987, at *6 (E.D.N.Y. Apr. 13, 2016), *adopted by* 2017 WL 945851 ("Although this Court's award of prejudgment interest on LMRA claims is discretionary, this Court finds no reason to alter the interest rate to which the parties agreed."). Therefore, the principal amount on which interest accrues at a rate of 10% per annum is $240,188.10, the total amount of contributions owed by Doran Tatrow.

The remaining variable that must be determined is the period of time during which interest on this principal amount accrues, including a start date and an end date of this period. In lieu of a

date range, the Plaintiffs simply provide the conclusory figure of $72,186.93. *See* Kuzma Decl. ¶ 15.  It is not clear to the Court how Plaintiff arrived at this number and Plaintiff provided no elaboration in any of its affidavits.  Therefore, knowing the principal amount on which interest is owed at a rate of 10% per annum, this Court employed the single reasonable intermediate date method.

To determine the start date, courts in this District have frequently identified a "single reasonable intermediate date" between when the first and last sets of contributions became due and owing. *Triple A Grp.*, 708 F. Supp. 2d at 287 (quoting N.Y. C.P.L.R. § 5001(b)).  Courts have found that this method of calculation serves as a practical approximation of the amount of interest owed on a total principal where, as here, each unpaid contribution that makes up the principal became due and owing at a separate point in time. *Id.*; *Trs. of the Pavers & Rd. Builders Dist. Council Welfare v. Arbor Concrete Corp.*, No. 15-CV-2481 (FB) (RML), 2015 WL 9598872, at *3 n.2 (E.D.N.Y. Dec. 15, 2015), *adopted sub nom. Pavers & Rd. Builders Dist. Council Welfare v. Arbor Concrete Corp.*, 2016 WL 67279 (E.D.N.Y. Jan. 5, 2016).  "Courts have wide discretion to determine a reasonable date from which to award prejudgment interest." *Kliger v. Liberty Saverite Supermarket Inc.*, No. 17-CV-02520-FB-ST, 2018 WL 4782342, at *8 (E.D.N.Y. Sept. 17, 2018), *report and recommendation adopted as modified*, No. 17-CV-02520-FB-ST, 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018) (citing *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)).

Here, the relevant period of unmade contributions is July 1, 2014 though December 31, 2017. *See* Am. Compl. ¶ 15; *see* Kuzma Decl. ¶ 3.  The midpoint of that period is March 31, 2016.

As of February 7, 2020, the day Plaintiffs moved for default judgment, that amount was $72, 182.60.[6]

Having determined when the interest starts to accrue, it only remains to determine when it ceases. In ERISA contributions cases, courts in this District have consistently set the end date for the calculation of interest as the date the final judgment is entered, even where Plaintiffs requested a different end date. *See Bd. of Trs. of the UFCW Local 50 Pension Fund v. Baker Hill Packing Inc.*, No. 13-CV-1888 (JS) (SIL), 2015 WL 867013, at *11 (E.D.N.Y. Feb. 27, 2015) (collecting cases); *see also, e.g.*, *UFCW Local 50 Pension Fund v. Food Depot, Inc.*, No. 16-CV-6197 (ADS) (SIL), 2018 WL 2186407, at *1 (E.D.N.Y. May 10, 2018) (awarding interest as a sum certain "plus daily interest on unpaid contributions through entry of judgment"). In this case, interest on the principal accrues at a daily rate of $65.80.[7]

The Court therefore respectfully recommends that Plaintiffs be awarded interest in the amount of $72, 182.60, plus $65.80 times the number of days between February 7, 2020 and the date judgment is entered.

C.    Liquidated Damages

Under ERISA, Plaintiffs are entitled to recover liquidated damages in an amount equal to the greater of (i) interest on the unpaid contributions or (ii) the liquidated damages provided for under the plan, in an amount not in excess of 20% of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Plaintiffs appear to elect for liquidated damages in the amount of 20% of the unpaid contributions (*see* Sullivan Decl. ¶ 16), but the statute is clear that "the Court shall award"

---

[6] 240,188.10 * .10 / 365 * 1097, i.e. the total principal, multiplied by the interest rate, divided by the number of days in one year, times the number of days between March 31, 2016 and February 7, 2020.

[7] $240,188.10 * .10 / 365.

Plaintiffs "an amount equal to the greater of" the interest or the liquidated damages. 29 U.S.C. § 1132(g)(2)(C); *see also DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1040 (E.D.N.Y. 1993) ("The [ERISA] statute therefore provides for a double interest payment or alternative liquidated damages to compensate a multiemployer benefit fund plan for costs incurred in connection with delinquencies[.]").  In this case, the interest on the unpaid contributions is greater than the liquidated damages.

Accordingly, the Court respectfully recommends that Plaintiffs be awarded, in addition to the interest owed pursuant to 29 U.S.C. § 1132(g)(2)(B), damages in the amount of $72,182.60, plus $65.80 times the number of days between February 7, 2020 and the date judgment is entered.

### D.    Attorney's Fees and Costs

ERISA requires the court to award reasonable attorney's fees and costs in a case where the plaintiff seeking to recover delinquent contributions prevails. 29 U.S.C. § 1132(g)(2)(D). However, Plaintiffs have not submitted any evidence in support of attorney's fees. "'Indeed, nowhere in the papers submitted in connection with this inquest have [P]laintiffs even suggested an amount being sought.  In the absence of any detailed contemporaneous listings of tasks performed, including the dates and times that the services were rendered, the Court declines to recommend an award of attorney's fees.'" *P.P.L. Constr. Servs.*, 2017 WL 9481016, at *13 (quoting *Bricklayers Ins. & Welfare Fund v. Precise Brick, Inc.*, No. 08-CV-4362 (CBA) (CLP), 2009 WL 4891821, at *8 (E.D.N.Y. Nov. 5, 2009)) (brackets in original).

Plaintiffs request $400.00 in costs pursuant to 29 U.S.C. ¶ 1132(g)(2)(D). Minnefor Decl. ¶ 2, ECF No. 34-3.  This represents the cost of filing Plaintiffs' complaint.  *See id.* The Court recommends awarding Plaintiffs $400.00 for this cost.

E.   Audit

Plaintiffs request that the Court issue an injunction, pursuant to 29 U.S.C. § 1132(g)(2)(E), requiring Doran Tatrow to submit to an audit of its books and records in connection with its obligations to make contributions to Plaintiffs under the CBAs. Am. Compl. ¶ 47-48.  The CBAs provide that "[t]he books and records of the Employer shall be made available at all reasonable times for inspection and audit by . . . representatives of the Trustees of any of the Bricklayers Fringe Benefit Funds." First CBA at 13, ECF No. 34-6; Second CBA at 45, ECF No. 34-6.

Unless a defendant has already submitted to an audit covering the applicable period, courts in this Circuit frequently grant the requests of plaintiffs to conduct an audit of the defendant's records as provided for in the applicable collective bargaining agreement. *See Sullivan v. Marble Unique Corp.*, No. 10-CV-3582 (NGG) (LB), 2011 WL 5401987, at *14 (E.D.N.Y. Aug. 30, 2011) (collecting cases).  The period of the records reviewed in the audit must, however, be limited to the period during which the employer was bound by the CBA. *See Verse*, 2013 WL 4883966, at *8 (collecting cases).  In this case, the effective period of the Second CBA is from February 1, 2015 through January 31, 2019. *See* Second CBA at 34, ECF No. 34-6

The Court therefore recommends issuing an injunction requiring Doran Tatrow to submit to an audit by Plaintiffs under the terms described in the Second CBA for the period from January 1, 2018 to January 31, 2019.  If the audit reveals that any additional damages are owed to Plaintiffs by Defendants, the Court recommends allowing Plaintiffs to supplement their motion for default judgment to request any such additional damages within thirty (30) days of completion of the audit. *See La Barbera v. J F H Mak Trucking, Inc.*, No. 98-CV-7291 (SJ) (RLM), 2007 WL 1827833, at *4 n.11 (E.D.N.Y. June 22, 2007) (collecting cases in which courts entered a default judgment against a party, required that party to submit to an audit, and reserved jurisdiction to entertain a

motion to modify the judgment in light of the audit); *accord Trs. of the New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Champion Int'l Constr. Corp.*, No. 18-CV-5881 (JGK), 2018 WL 5635218, at *5 (S.D.N.Y. Oct. 30, 2018).

## II.      Claims against Mr. Doran

*Liability*

Plaintiffs have established Mr. Doran's individual liability for breach of his fiduciary duty to the ERISA Funds and for state law conversion of unremitted dues to the Non-ERISA Plaintiffs for the period between July 1, 2014 and December 31, 2017.

### A.      Breach of Fiduciary Duty

Under Section 409 of ERISA, individuals who serve as fiduciaries of an ERISA plan may be held personally liable for breaches of their fiduciary duties. *See* 29 U.S.C. § 1109(a); *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997).  To establish that an individual defendant is personally liable under this provision, plaintiffs must show "both that (1) the unpaid contributions were plan assets and (2) [the individual defendant] exercised a level of control over those assets sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009).

Plaintiffs have established that the unpaid contributions to the ERISA Funds were plan assets.  "Amounts withheld from wages by an employer for contributions to a vacation or pension fund are plan assets of an ERISA employee welfare fund." *Bricklayers Ins. & Welfare Fund v. FJW, Inc.*, No. 15-CV-887 (SJ) (SMG), 2016 WL 4691293, at *3 (E.D.N.Y. Aug. 19, 2016) (citing 29 C.F.R. § 2510.3-102(a)), *adopted by* 2016 WL 4688857 (E.D.N.Y. Sept. 7, 2016).  Similarly, delinquent contributions owed to a benefit fund are plan assets if so defined in the agreement creating the fund. *United States v. Panepinto*, 818 F. Supp. 48, 51 (E.D.N.Y. 1993).  Plaintiffs

request that Mr. Doran be held personally liable for unpaid contributions to four funds: the Vacation Fund, the International Pension Fund ("IPF"), the Pension Fund, and the Annuity Fund. 2d Mem. Supp. at 7, ECF No. 34-4. The employer is required to deduct after-tax monies from the wages of Plaintiffs' laborers and remit these deductions to the Vacation Fund. Sullivan Decl. ¶ 5, ECF No. 34-1; First CBA at 12, ECF No. 34-6; Second CBA at 44, ECF No. 34-6.[8] The Agreement and Declaration of Trust of the IPF, the Pension and Annuity Plan of the Pension Fund, and the Supplemental Annuity Plan of the Annuity Fund all provide that money paid into or due to be paid into these funds are assets of each of the plans. *See* ECF No. 34-6 at 127, 131, 133. Thus, the unpaid contributions to these four funds qualify as plan assets.

Plaintiffs have also established that Mr. Doran held a sufficient level of control over these plan assets to make him a fiduciary. "In determining whether an individual defendant is personally liable as a fiduciary . . . courts look to several factors, most significantly, whether a defendant was responsible for authorizing and making payments to an employee benefits plan." *Trustees of Sheet Metal Workers Int'l Ass'n Local No. 38 Vacation Fund*, No. 10-CV-1619 (VB), 2011 WL 9010113, at *6 (S.D.N.Y. Sept. 4, 2011) (internal quotation marks and citation omitted); *see also LoPresti*, 126 F.3d at 40 ("Congress intended ERISA's definition of fiduciary 'to be broadly construed.'") (quoting *Blatt v. Marshall & Lasman*, 812 F.2d 810, 812 (2d Cir. 1987)).

Here, Plaintiffs allege that Mr. Doran is the owner of Doran Tatrow (Am. Compl. ¶ 11, ECF No. 20), the person who "exercis[ed] control over the disposition of the wage deductions that constituted employee contributions to the Vacation Fund" (Am. Compl. ¶ 25, ECF No. 20), and

---

[8] Plaintiffs claim that remittances to the Vacation Fund must be made on a weekly basis (Am. Compl. ¶ 23, ECF No.20; Sullivan Decl. ¶ 5; ECF No. 34-1), but the CBA provides that contributions to the Fund must be made on a monthly basis (First CBA, ECF No. 34-6 at 12; Second CBA, ECF No. 34-6 at 44). Ultimately, this discrepancy does not affect the amount of damages owed by Mr. Doran.

the person who "manages the day-to-day activities and payrolls of Doran Tatrow and determines if and when to make contributions to" the other three funds (Am. Compl. ¶ 29, ECF No. 20; Mem. Supp. at 7, ECF No. 34-4).  Similar allegations have been found sufficient to establish an individual's status as an ERISA fiduciary. *See, e.g.*, *Bricklayers Ins. & Welfare Fund v. Tristate Constr. & Masonry, Corp.*, No. 16-CV-4545 (MKB) (VMS), 2018 WL 2244701, at *8 (E.D.N.Y. Feb. 9, 2018), *adopted in relevant part by* 2018 WL 1358813 (E.D.N.Y. Mar. 16, 2018); *Sullivan v. M.A.C. Design Corp.,* No. 14-CV-1846 (NGG) (VVP), 2015 WL 5518456, at *4 (E.D.N.Y. Sept. 17, 2015).

The Court therefore recommends finding that Mr. Doran is a fiduciary of the Vacation Fund, the IPF, the Pension Fund, and the Annuity Fund, and that he be held personally liable for unpaid contributions to these funds pursuant to 29 U.S.C. § 1109(a).

B.    Conversion

Plaintiffs also seek to hold Mr. Doran personally liable for conversion of union dues deductions pursuant to New York law[9].  "Conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." *LoPresti*, 126 F.3d at 41 (quoting *Rolls–Royce Motor Cars, Inc. v.*

---

[9] ERISA would preempt Plaintiffs' conversion claim were it related to plan assets, but union dues deductions taken from the paychecks of Local 1 members are not plan assets, and ERISA therefore does not preempt conversion claims relating to them. See 29 C.F.R. § 2510.3-102(a) ("[T]he assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets."); LoPresti, 126 F.3d at 41 (stating ERISA preempts plaintiff's conversion claims insofar as they relate to plan assets but noting, "To the extent that the [plaintiff's] conversion claim is premised upon the failure of the [defendants] to tender to the Union the withheld dues, however, ERISA does not preempt that particular claim. That is so because, as noted earlier, admittedly the Union dues were not 'plan assets' subject to ERISA.").

*Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996)).  An action for conversion will lie "where there is an obligation to return or otherwise treat in a particular manner the specific money in question." *Id.* (internal quotation marks and citation omitted).

Plaintiffs allege that Mr. Doran failed to segregate and remit Local 1 dues taken from the hourly wages of Local 1 members and commingled the dues deductions with Doran Tatrow's general assets, using them to pay corporate expenses. *See* Am. Compl. ¶ 43, ECF No. 20.  Those allegations are sufficient to state a claim for conversion. *See LoPresti*, 126 F.3d at 41 ("[I]t is well-settled that an action will lie under New York law for conversion of money when there is an obligation to return or otherwise treat in a particular manner the specific money in question.") (quoting *Vanderbilt Univ. v. Dipsters Corp.,* No. 84-CV-7215 (CHS), 1986 WL 10471, at *3 (S.D.N.Y. Sept. 17, 1986)); *see, e.g.*, *Bricklayers Ins. & Welfare Fund v. Vinza Concrete, Inc.*, No. 15-CV-80 (AMD) (CLP), 2017 WL 4326562, at *5 (E.D.N.Y. Sept. 11, 2017), *adopted by* 2017 WL 4296729 (E.D.N.Y. Sept. 26, 2017)

<u>Damages</u>

The Second Circuit has determined that commingling plan assets, and then diverting those assets to pay creditors rather than forwarding the assets to the funds, constitutes a breach of fiduciary duty under ERISA. *LoPresti*, 126 F.3d at 40-41; *see also Bricklayers & Allied Craftworkers Local 2, Albany N.Y. Pension Fund v. Moulton Masonry & Constr.*, 779 F.3d 182, 188 (2d Cir. 2015) ("A fiduciary that unlawfully withholds plan assets is 'personally liable to make good to such plan any losses to the plan.'") (quoting 29 U.S.C. § 1109(a)).

Plaintiffs allege that Mr. Doran failed to remit the monies deducted from the wages of Local 1 bricklayers, instead intermingling these monies with Doran Tatrow's general assets, and using them to pay Doran Tatrow's creditors and for other corporate expenses. Am. Compl. ¶¶ 19-

41, ECF No. 20.  Mr. Doran failed to remit $37,017.50 to the Vacation Fund, $9,645.28 to the International Pension Fund, $50,555.85 to the Pension Fund, and $44,421.00 to the Annuity Fund. Kuzma Decl. ¶ 7, ECF No. 34-2.

Plaintiffs request that the Court hold Mr. Doran individually liable for the total amount of these unremitted contributions, which is $141,639.63. 2d Mem. Supp. at 7, 15, ECF No. 34-4.  The Court recommends that Mr. Doran be held jointly and severally liable with Doran Tatrow for this amount. *See Bricklayers Ins. & Welfare Fund v. J.K. Merillin Builders, Inc.*, No. 13-CV-1048 (ARR) (VVP), 2014 WL 6674404, at *1 (E.D.N.Y. Oct. 6, 2014) (noting that liability of individual ERISA fiduciary who failed to make contributions to funds ran jointly and severally with company that was required to make contributions to those funds).

Plaintiffs further allege that Mr. Doran failed to remit $18,415.94 in dues deducted from the wages of Local 1 bricklayers. Am. Compl.. ¶ 43, ECF No. 20; 2d. Mem. Supp. at 15, ECF No. 34-4.  Plaintiffs request this amount be awarded in damages as a remedy for conversion. 2d Mem. Supp. at 8, ECF No. 34-4.  "Damages for conversion are usually the value of the property at the time of conversion." *Rajeev Sindhwani, M.D., PLLC v. Coe Bus. Serv., Inc.*, 861 N.Y.S.2d 705, 708 (App. Div. 2008).  Thus, Plaintiffs are entitled to repayment of dues in the amount that Mr. Doran failed to remit.  Therefore, the Court recommends granting Plaintiffs' conversion claim and awarding Plaintiffs $18,415.94 in unremitted dues, for which Mr. Doran is jointly and severally liable with Doran Tatrow.

## CONCLUSION

For the reasons set forth above, the Court hereby recommends that Plaintiffs' motion for default judgment against Doran Tatrow Associates, Inc. and Mr. Patrick Doran be GRANTED and that damages be awarded as follows:

(i)    As against Doran Tatrow Associates, Inc.:

   a.  Unpaid contributions to the Funds in the amount of $220,291.46;

   b.  Unpaid remittances to Local 1 and the LMC in the amount of $19,896.64;

   c.  Interest on the unpaid contributions to the Funds and unpaid remittances to Local 1 and the LMC in the amount of $72,182.60, through February 7, 2020, plus $65.80 per day thereafter to the date of judgment;

   d.  Liquidated damages equal to the final amount of interest on the unpaid principal, i.e. an additional award of $72,182.60, through February 7, 2020, plus $65.80 per day thereafter to the date of judgment; and

   e.  Costs in the amount of $400.00.

(ii)   As against Mr. Patrick Doran, who is jointly and severally liable for a portion of the damages and costs assessed against Doran Tatrow Associates, Inc.:

   a.  Unpaid contributions to the Funds in the amount of $141,639.63; and

   b.  Unpaid remittances to Local 1 in the amount of $18,415.94.

Additionally, the Court recommends issuing an injunction requiring Doran Tatrow Associates, Inc. to submit to an audit of its books and records by Plaintiffs under the terms described in the Second Collective Bargaining Agreement for the period from January 1, 2017 to January 31, 2019. The Court recommends allowing Plaintiffs to supplement their motion for default judgment, within thirty (30) days of completion of the audit, with a request for additional damages if such audit uncovers amounts owed by Defendants that were not previously awarded by the Court.

Plaintiffs are ordered to mail a copy of this Report and Recommendation to Defendants at their respective last known addresses and file proof of mailing with the Court within five (5)

business days.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Responses to any objections shall be due fourteen (14) days from service of the objection. *See* Fed. R. Civ. P. 72(b)(2).

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
       March 15, 2021